UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
v.                                )
                                  )    Criminal No. 17-40034-TSH
RYAN FLYNN,                       )
                                  )
                                  )
            Defendant              )
                                  )
                                  )
_____)


## ORDER ON FINDING OF VIOLATION OF PRETRIAL RELEASE
January 26, 2018

Hennessy, M.J.

This is a proceeding under 18 U.S.C. § 3148. The Government has moved to revoke Defendant Ryan Flynn's release on conditions based on information indicating that after his August 7, 2017 detention hearing, Flynn participated in submitting a false and fraudulent loan application to a federally-insured credit union, thereby breaching the prohibition against committing a crime while on release. Following a hearing at which both sides submitted documents and proffered other information, I took the matter under advisement. For the reasons stated below, I DENY the Government's motion and order Flynn to remain on pretrial supervision. However, I add two further conditions of release. They are:

> **Flynn is prohibited from assuming any additional debt, either as a borrower or co-borrower, or from being the beneficiary, direct or indirect, of any loan assumed by another person, without submitting any such application to borrow to the Government and Probation Department two weeks before its submission to the proposed lender; and**

> **On or before the close of business on February 5, 2018, Flynn is directed to notify the Digital Credit Union of, and correct, the inaccuracies in his salary and employment**

1

**history in the loan identified in Government Exhibit 2 and assigned Document Number 2037156. Flynn shall serve a copy of such notification on the Government and Probation Department contemporaneously with the submission to the DCU.**

In addition to the foregoing, I modify the current release conditions as follows: **Flynn's travel is restricted to the Commonwealth of Massachusetts.**

**All other conditions of release remain in full force and effect.**

## FACTUAL BACKGROUND

Flynn is charged in an indictment with Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. § 846, and two counts of Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1). See Docket No.4. Agents arrested Flynn on August 2, 2017 and, on August 7, 2017, I released Flynn on conditions. See Docket Nos. 10 and 14. Among the conditions of release was the statutorily-mandated prohibition that Flynn not commit a Federal, State, or local crime. See Docket No. 16; 18 U.S.C. § 3142(b). On January 8, 2018, the Government submitted a motion to revoke Flynn's release, alleging that in September 2017 – less than a month after the detention hearing – Flynn submitted a loan application to the Digital Credit Union (DCU) in which he grossly overstated his income, thereby committing, at a minimum, fraud in violation of 18 U.S.C. § 1014. See Docket No. 36. The motion also recited instances prior to Flynn's arrest and detention hearing in which Flynn and/or his wife submitted loan applications or other documents that inaccurately reported their salaries and employment. Id. In the Government's view, these prior instances establish a pattern of jointly-undertaken fraudulent activity that is relevant to assessing Flynn's culpability for the September 2017 DCU application. Id.

I held a hearing on January 23, 2018 at which both sides submitted documents, proffered information, and argued their positions for and against revocation. See Docket No. 41. Among other things, the Government's evidence showed the following:

On September 1, 2017, Flynn signed a Security Agreement for a loan; the loan application inaccurately represented that Flynn earned $4,166 per month (approximately $50,000 per year), Ex. 2;

Flynn signed a letter dated June 9, 2018 sent to the Commonwealth, representing that Flynn was unemployed, had no income, and worked mostly seasonally, Ex. 1;

Accountants for Bandilla and Sons (identified in Flynn's Pretrial Services report as his employer for 15 years) wrote a letter dated November 29, 2017 reporting that Flynn earned $9,250 in 2017, Ex. 3;

1099s issued by Bandilla and Sons showed that in 2014, Flynn received $27,095 in compensation; in 2015, $36,085 in compensation; and in 2016, $34,750 in compensation, Ex. 4;

Flynn's wife submitted a loan application dated May 31, 2017 that falsely represented that she also worked at Bandilla and Sons and had done so for six years, earning $35,000 per year, Ex. 5;

Flynn and his wife submitted a loan application dated May 25, 2016 that falsely represented that Flynn was a manager at Bandilla and Sons, had been employed there for 15 years, and earned $60,000 annually. The same application falsely represented that Flynn's wife was and had been a secretary at Bandilla and Sons, earning $48,000 annually, Ex. 7;

Flynn submitted an application for a JetBlue Card dated January 13, 2016 in which he falsely represented that he earned $60,500 annually at Bandilla and Sons, Ex. 6;

Flynn and his wife submitted a loan application dated October 26, 2015 that falsely represented that Flynn was a manager at Bandilla and Sons, had been employed there for 15 years, and earned $60,500 annually. The same application falsely represented that Flynn's wife was and had been for two years an office manager at Bandilla and Sons, earning $27,000 annually, Ex. 8;

Flynn's wife submitted a loan application dated July 8, 2014 that falsely represented that she worked at Bandilla and Sons for three years as an office manager, earning $32,000 per year, Ex. 9. Appended to the application was a copy of a check from Bandilla and Sons to Flynn's wife in the amount of $800. The Government proffered that the check was never negotiated, Ex. 9.

Flynn's response to this evidence is that nearly all of it predates Flynn's arrest and release on conditions. He argues, and it is not disputed, that he has complied with the conditions of his release, including a curfew and drug testing. As to the only conduct that post-dates his release –

3

the September 2017 loan application to DCU – Flynn argues that the evidence only shows that a loan application was submitted and that Flynn signed the ultimate Security Agreement. Flynn argues that the evidence fails to show that he himself made a false statement, provided concededly inaccurate information, or did anything more than benefit from the loan application. By implication, Flynn suggests that the September 2017 loan application was the doing of his wife. She, of course, has not been arrested or placed on any conditions.

Flynn also offered four documents, two of which show that while on release he earned a commercial driver's license (CDL). A letter from NETTTS, the school at which Flynn earned his CDL, describes him as exemplary, dedicated, and current on all financial obligations. Two other documents reflect academic achievements of Flynn's wife at Quinsigamond Community College, where her efforts earned her Dean's List recognition in Fall 2017, and acceptance into the Nurse Education program for the Fall of 2018. Flynn represents that he recently obtained employment driving for a local trucker and that his wife works, in effect, full-time hours in patient registration at UMass Memorial Hospital.

The Government counters by noting that Flynn's history of misstatements in loan applications predating his release evidences his knowledge of, and participation in, the fraudulent September 2017 loan application.

## ANALYSIS

Section 3148 of the Bail Reform Act provides a process for revocation of an order of pretrial release. In relevant part it states that a "judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

(1) finds that there is –

>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release;  or

> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that –
>
>> (A) based on the factors set forth in section 3142(g) . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>>
>> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148.

Applying the foregoing provisions, I find that there is probable cause to believe that Flynn committed a Federal crime while on release. In relevant part, Section 1014 of Title 18 provides:

> Whoever knowingly makes any false statement . . . for the purpose of influencing in any way the action of . . . a Federal credit union, [or] any institution the accounts of which are insured by . . . the National Credit Union Administration Board . . . [shall be guilty of a felony].

18 U.S.C. § 1014. To prove someone guilty of this offense, the Government must prove beyond a reasonable doubt:

> First, that Defendant made or caused to be made a false statement to an entity listed in Section 1014;
>
> Second, that Defendant acted knowingly, that is, that Defendant knew the information was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth; and
>
> Third, that Defendant made the false statement for the purpose of influencing in any way the action of the entity.

See Pattern Jury Instructions, Instruction 4.09, First Circuit (1998).

Here, the evidence shows that on or about August 25, 2017 a loan application was submitted to DCU. See Ex. 2. The Security Agreement dated September 1, 2017, which Flynn and his wife signed, states that DCU is a federal credit union. Id. It further states that DCU is

insured by NCUA, the National Credit Union Administration Board. Id. There is no question that false information was provided in this application. Flynn's income as reported in the application is five times the $9,250 he earned in 2017. See Exs. 2 and 3. It is a fair and reasonable inference that the false information was submitted in order to influence DCU's decision to extend credit. Indeed, if Flynn's true income had been reported, it certainly would have been a consideration in DCU's lending decision. Lastly, Flynn knew the information was false: just two and a half months earlier in June 2017, Flynn wrote a letter to the Commonwealth of Massachusetts in support of qualifying for MassHealth, in which Flynn stated that he was unemployed and had no source of income. See Ex. 1.

Flynn's response is that the evidence fails to show that Flynn himself knew of or made the false statement about his income. To be sure, the application has no signature and appears to have been submitted electronically. Presumably, anyone with access to a computer and Flynn's personal identifying information could have submitted this document. As noted, Flynn implies that his wife, for example, could have prepared the application. I find this argument entirely unpersuasive. After all, Flynn signed the Security Agreement, which reported the loan amount and its approval. See Ex. 2. Flynn's signature appears next to the title "Borrower;" his wife's signature is next to "Co-borrower/cosigner." Even if Flynn did not participate in preparing the application, signing the Security Agreement just might have caused him to hazard a question to his wife as to how Flynn mysteriously came to be a "Borrower." Admittedly, the amount financed is very modest: $7,500. Id. But for a person who has been arrested, is unemployed, and has no income, a question or two about assuming indebtedness might arise. That is especially true where, as here, this modest amount is going to cost the borrower over $2,000 in interest. Finally, as persuasively argued by the Government, the September 2017 loan application is one in a series of

documents in which Flynn and his wife falsely represented their incomes and employment histories in an effort to influence creditors or the Commonwealth to extend credit or benefits.

But even if I indulge Flynn's argument, I note that the standard under the first prong of Section 3148 is probable cause – what the Court has described as facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been committed. See Beck v. Ohio, 379 U.S. 89, 91 (1964). At a criminal trial governed by a standard of proof beyond a reasonable doubt, Flynn's argument may persuade a juror that the Government's proof is deficient. But here, the evidence easily meets the probable cause showing for the first prong of the Section 3148 inquiry.

The second prong of the Section 3148 inquiry is a closer call. Flynn's involvement in borrowing on the basis of knowingly false information does not convince me that he is a greater risk of flight or danger to anyone's safety. Similarly, I believe that with the additional conditions and modification indicated above, Flynn will abide by the conditions of his release. I appreciate that violating a prohibition against committing a crime while on release is no small departure from a release order. In degree, it is beyond, for instance, failing to report a change in telephone number, traveling to an adjacent state without permission, or even failing a test for a prohibited substance. However, at the same time as the unlawful conduct for which I find probable cause, Flynn has persevered in obtaining a CDL. According to the letter from NETTTS, Flynn completed a 540-hour program. He earned a perfect GPA. He is now employed as a truck driver with a local concern. On top of these accomplishments, Flynn has been actively involved in caring for two daughters and had been active in the life of his son, who resides separately from Flynn. Flynn's wife is employed and positioned to earn a license as a nurse. These developments are significant.

In my view, they provide Flynn with sufficient incentives to continue his compliance which, as far as this Court is aware, has been complete, apart from the September 2017 loan application.

It is a close call. It is offensive to the Court when a Defendant released by the Court engages in conduct which comes so close to the line and, as here, crosses it. Nonetheless, with some misgivings, I find that the second prong of the Section 3148 inquiry is not satisfied.

## CONCLUSION

Flynn is ordered released on the same conditions as this Court imposed on August 7, 2017, with the following additions and modification:

> **Flynn is prohibited from assuming any additional debt, either as a borrower or co-borrower, or from being the beneficiary, direct or indirect, of any loan assumed by another person, without submitting any such application to borrow to the Government and Probation Department two weeks before its submission to the proposed lender; and**

> **On or before the close of business on February 5, 2018, Flynn is directed to notify the Digital Credit Union of, and correct, the inaccuracies in his salary and employment history in the loan identified in Government Exhibit 2 and assigned Document Number 2037156. Flynn shall serve a copy of such notification on the Government and Probation Department contemporaneously with the submission to the DCU.**

In addition to the foregoing, I modify the current release conditions as follows: **Flynn's**

**travel is restricted to the Commonwealth of Massachusetts.**

**All other conditions of release remain in full force and effect.**[1]

                                               / s / David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[1] The parties are hereby advised that under the provisions of Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party may move for reconsideration by a district judge of the determination(s) and order(s) set forth herein within fourteen (14) days after receipt of a copy of this order, unless a different time is prescribed by this court or the district judge. The party seeking reconsideration shall file with the Clerk of this Court, and serve upon all parties, a written notice of the motion which shall specifically designate the order or part thereof to be reconsidered and the basis for the objection thereto. The district judge, upon timely motion, shall reconsider the magistrate's order and set aside any portion thereof found to be clearly erroneous in fact or contrary to law. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).